DECISION AND JUDGMENT ENTRY
Penn Traffic Company ("Penn Traffic") and Virginia and Marlin Ramsey appeal the grant of summary judgment by the Pike County Court of Common Pleas to Cincinnati Insurance Company ("CIC"), Federal Insurance Company ("Federal") and AIU Insurance Company, Insurance Company of the State of Pennsylvania and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("AIG Companies"). Appellants assign the following errors:
ASSIGNMENT OF ERROR NUMBER ONE
 The Trial Court Erred in Granting Cincinnati Insurance Company's Motion For Summary Judgment and In Denying Appellants' Motion For Summary Judgment and Declaratory Relief Against Cincinnati.
ASSIGNMENT OF ERROR NUMBER TWO
 The Trial Court Erred in Granting Cincinnati Insurance Company's Motion For Summary Judgment Prior To the Completion of Discovery.
ASSIGNMENT OF ERROR NUMBER THREE
 The Trial Court Erred In Granting Cincinnati Final Judgment Without Ever Considering Penn Traffic's Reformation Claim.
ASSIGNMENT OF ERROR NUMBER FOUR
 The Trial Court Erred In Granting The AIG Insurers' Motion For Summary Judgment And In Denying Appellants' Motion For Declaratory Relief And Partial Summary Judgment.
ASSIGNMENT OF ERROR NUMBER FIVE
 The Trial Court Erred in Granting Federal's Motion For Summary Judgment And In Denying Appellants' Motion For Declaratory Relief and Partial Summary Judgment.
 Finding merit in appellants' fourth and fifth assignments of errors, we affirm in part and reverse in part and remand this matter to the trial court.
 I.
The parties do not dispute the underlying facts. On April 12, 1995, Virginia Ramsey, an employee of Big Bear, fell off a loading dock at work and sustained a serious head injury. Mrs. Ramsey and her husband, Marlin, filed an intentional tort lawsuit against Penn Traffic, the owner of Big Bear, which CIC, Big Bear's longtime liability carrier, defended. In October 1997, the Ramseys obtained a judgment of approximately $2.7 million plus attorney's fees and prejudgment interest based on the theory that Penn Traffic's failure to have a guard rail on the loading dock made Mrs. Ramsey's accident substantially certain to occur. CIC and the other insurance carriers declined to indemnify Penn Traffic for the judgment, so Penn Traffic filed a declaratory judgment action against them. Penn Traffic joined the Ramseys as necessary parties.
All parties filed cross-motions for summary judgment. After hearing argument, the court granted summary judgment to CIC, AIG Companies, and Federal. The court found that the policy issued by Aetna Casualty 
Surety Company ("Aetna") provided coverage, but withheld issuing a final judgment due to an unresolved factual issue regarding whether Penn Traffic or its insurance agent, J H Marsh McLennan, Inc. ("Marsh McLennan"), had provided Aetna with prompt notice of the claim. Aetna and Marsh McLennan are not parties to this appeal as no final judgment has been issued regarding them. However, Penn Traffic and the Ramseys appealed the trial court's grant of summary judgment, which contained the appropriate Civ.R. 54(B) language, to CIC, AIG Companies and Federal.
 II.
In their first assignment of error, appellants contend that the trial court erred in granting CIC's summary judgment motion and denying appellants' summary judgment motion and request for declaratory relief against CIC.
When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g.,Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412.
Civ.R. 56(C) provides, in part:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts, of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-430.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
 Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52.
Here, the material facts are not in dispute. Rather, the dispute involves the interpretation of insurance contracts and thus presents a question of whether the movants are entitled to judgment as a matter of law. See Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212; InlandRefuse Transfer Co. v. Browning-Ferris Industries, Inc. (1984),15 Ohio St.3d 321, 322. When construing an insurance contract, a court employs the same principles involved in interpreting other written contracts. Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657 . When the language of an insurance provision is clear and unambiguous, a "court may not `resort to construction of that language.'" Id., quoting Karabin v. State Auto. Mut. Ins. Co. (1984),10 Ohio St.3d 163, 167. Additional rules of contract construction are discussed below.
CIC maintains that policy number CAP 767 14 95, appellants' Exhibit 6, was effective at the time of Mrs. Ramsey's injury. This policy includes a Commercial General Liability Coverage Form and an Ohio Liability Coverage Enhancement. Penn Traffic contends that policy number CPP 063 19 92, appellants' Exhibit 5, was effective when Mrs. Ramsey was injured. This policy includes a Commercial General Liability Coverage Form and an Ohio Stop-Gap Employers' Liability Coverage Form.
In granting summary judgment, the trial court found that "there is no genuine issue as to any material fact based on the clear and unambiguous language of the underlying policies that injury to an employee by an intentional tort of the insured is not covered by the CIC policies." The court then found that CIC was entitled to judgment as a matter of law. Based on the court's use of the word "policies," we conclude that the court found no coverage under either policy and, therefore, did not reach the issue of which policy was in effect at the time of the accident.
We examine each policy to determine its coverage for substantial certainty intentional torts.
 A.
Policy Number CAP 767 14 95 contains the following relevant provisions in the Commercial General Liability Coverage Form:
SECTION I — COVERAGES
 COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
Insuring Agreement.
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. * * *
This insurance applies to "bodily injury" and "property damage" only if:
 The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
 The "bodily injury" or "property damage" occurs during the policy period.
* * *
Exclusions.
This insurance does not apply to:
 "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
* * *
e. "Bodily injury" to:
 An employee of the insured arising out of and in the course of employment by the insured; or
* * *
SECTION V — DEFINITIONS
* * *
 9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
 It also contains the following relevant language under the Ohio Liability Coverage Enhancement:
 THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
 This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
* * *
SECTION I COVERAGES is amended to include the following:
COVERAGE D-OHIO LIABILITY COVERAGE
Insuring Agreement.
 We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" sustained by any employee of the insured arising out of or in the course of his or her employment by the insured, provided the employee is reported and declared under the Workers' Compensation Fund of the State of Ohio. No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance applies only to "bodily injury" which occurs during the policy period. The "bodily injury" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." * * *
Exclusions.
This insurance does not apply to:
* * *
 h. "bodily injury" expected or intended from the standpoint of the insured. This exclusion includes but is not limited to:
 any liability for acts committed by or at the direction of an insured with the deliberate intent to injure: and any liability for acts committed by or at the direction of an insured in which the act is substantially certain to cause "bodily injury" when all three of the following conditions are met:
 (a) an insured knows of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 (b) an insured knows that if an employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be substantially certain; and
 (c) an insured under such circumstances and with such knowledge, does act to require the employee to continue to perform the dangerous task;
* * *
 In construing the general policy and the endorsement, we interpret the contract in its entirety. Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84, 89, overruled on other grounds, Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500. In other words, the endorsement must be read as if its terms were printed directly in the body of the general policy. Baker v. Aetna Casualty Surety Co. (1995), 107 Ohio App.3d 835, citing Jay Huddle Storage, Inc. v. Midwestern Indemnity Co. (Jan. 13, 1986), Henry App. No. 7-84-13, unreported.
There are two types of intentional torts existing under Ohio law.Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175. One is described as a "direct intent" tort such as battery where "the actor does something which brings about the exact result desired." Id. The other, which appears in the employment context, is a "substantial certainty" intentional tort in which the "actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result." Id. In order to establish intent for the purpose of proving a "substantial certainty" intentional tort, the employee must demonstrate:
 * * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
 Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
The Ohio Liability Coverage Enhancement was clearly written to exclude coverage of both "direct intent" employer torts and "substantial certainty" employer torts. Despite this language, appellants maintain that Penn Traffic is entitled to coverage under this policy.
Appellants rely on the "Who Is An Insured" section of the Ohio Liability Coverage Enhancement to support their position.[1] This provision provides that the executive officers, directors, and stockholders of corporations are insureds; however, it does not declare employees of the corporation to be insureds. Appellants argue that Mrs. Ramsey's injuries were caused by a Big Bear employee's actions. Because employees were intentionally deleted from the "Who Is An Insured" section of the enhancement, appellants assert that a reasonable reading of the policy is that the only acts excluded from coverage are those personally committed by or at the direction of the corporation's officers, directors or stockholders.
We disagree. The declaration sheet and the "Who Is An Insured" section of the enhancement both identify the organization, i.e. Big Bear, as an insured. As appellants point out, a corporation acts through its agents. The omission of employees from the designation as insureds does not create coverage for substantially certain intentional torts committed by the employees. It simply means that employees cannot look to the enhancement for coverage in the instance where they may have personal liability. Any other reading of the enhancement would be illogical. The absence of certain agents of the corporation from the designation of named insureds cannot be construed to create coverage in contravention with the express limitations of the exceptions from coverage. Policy number CAP 767 14 95 does not provide coverage to Penn Traffic for Mrs. Ramsey's injuries.
 B.
We look next to the coverage afforded by policy number CPP 063 19 92. The relevant provisions of the Commercial General Liability Coverage Form are identical to those above. The policy also contains an Ohio Stop-Gap Employers' Liability Coverage Form, which reads:
* * *
SECTION I COVERAGES
Insuring Agreement.
 We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," including death at any time resulting therefrom, sustained by any employee of the insured arising out of or in the course of his or her employment by the insured, provided the employee is reported and declared under the Workers' Compensation Fund of the State of Ohio. No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance applies only to "bodily injury" which occurs during the policy period. The "bodily injury" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory;" * * *.
Exclusions.
This insurance does not apply:
 to any premium, assessment, penalty, fine, benefits, or other obligation imposed by any workers' compensation, unemployment compensation, or disability benefits law, or under any similar law;
* * *
 to any injury sustained because of any act committed intentionally by or at the direction of the named insured and, if the named insured is a corporation or partnership, by any executive officer, director, stockholder, or partner thereof.
 Exclusions (a) and (g) above shall not exclude coverage for the legal liability of the insured other than benefits or compensation provided for under any workers' compensation act, resulting from the deliberate intentional act of an employee or agent (other than an executive officer, director, stockholder, or partner) to produce injury or death to another employee when such act is committed within the scope of employment.
* * *
SECTION V DEFINITIONS
* * *
"Occurrence" means:
An injury caused by accident occurring during the policy period; or
An injury caused or aggravated by disease the exposure to conditions of which occurs in the employment of the insured and exclusively within the policy period.
Assault and battery shall be deemed an occurrence unless committed by or at the direction of an insured.
* * *
Unlike the Ohio Liability Coverage Enhancement, the Stop-Gap Form does not indicate that it modifies the Commercial General Liability Coverage Form. Rather, it appears as a separate "sub-policy" with its own independent provisions and policy limits.
Appellants contend that they are entitled to coverage under both the Commercial General Liability Coverage Form and the Ohio Stop-Gap Employers' Liability Coverage Form. First, we examine coverage under the Commercial General Liability Coverage Form.
Appellants submit that the Commercial General Liability Coverage Form provides coverage for bodily injury caused by an "occurrence," subject to certain exclusions. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general and harmful conditions." However, the policy does not define "accident." Appellants argue that we should apply Physicians Ins. Co. v.Swanson (1991), 58 Ohio St.3d 189,[2] and hold that an injury itself, not merely the act, must be intended to void coverage. Appellants also argue that the exclusion for a bodily injury "expected or intended from the standpoint of the insured" does not void coverage. Appellants submit that this provision is ambiguous as a matter of law and, therefore, the clause must be construed against the insurer and in favor of Penn Traffic. Therefore, they argue that this exclusion should be construed as inapplicable to substantial certainty intentional torts.
CIC argues that for coverage to be triggered under the Commercial General Liability Coverage Form, there must be an "occurrence," which is defined as an accident. CIC maintains that a substantial certainty intentional tort does not meet the definition of "occurrence" because it is not an accident, e.g. it is not a fortuitous or chance event. CIC also contends that Swanson is inapplicable here because a separate exclusion for expected or intended injuries exists apart from the definition of "occurrence."
Having carefully reviewed the relevant case law and the policy, we conclude that we need not reach many of these arguments. Even assuming that Mrs. Ramsey's injuries were the result of an "occurrence" as defined in the policy and are not excluded under the "expected or intended from the standpoint of the insured" clause under Swanson, there is no coverage under the policy.
The Commercial General Liability Coverage Form specifically excludes "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured" from coverage. In Jones v. VIPDev. Co. (1984), 15 Ohio St.3d 90, the Ohio Supreme Court held that an intentionally injured worker could both recover under the workers' compensation system and sue his employer for an intentional tort. The Court also held that an employer cannot "setoff" the amount of the workers' compensation benefits from an award in an intentional tort lawsuit. As the First District noted in Richey v. Johnson Hardin Co. (July 17, 1998), Hamilton App. No. C-970767, unreported, "[t]he only way to reconcile this seemingly illogical result is to follow Justice Douglas's assertion that an injury caused by an employer's intentional tort happens in the course of an employee's employment, but outside the `employment relationship.'" See Kunkler v. Goodyear Tire Rubber Co. (1988), 36 Ohio St.3d 135 (Douglas, J., concurring); Brady v.Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, paragraph one of the syllabus. But, see, Maffett v. Moyer's Auto Wrecking, Inc. (June 7, 2000), Crawford App. Nos. 3-99-11 3-99-12, unreported (stating that an exclusion for injuries "arising out of and in the course of employment" does not apply to substantial certainty intentional torts because such injuries occur outside the employment relationship).
Under this rationale, Mrs. Ramsey's injuries clearly occurred "in the course of [her] employment" by Big Bear. We also conclude that Mrs. Ramsey's injuries "arose out of" her employment. The plain language meaning of "arising out of" is "resulting from" or "originating out of." Mrs. Ramsey was performing her job when she was injured and, but for her performing her job, she would not have been injured. Therefore, Mrs. Ramsey's injuries arose out of her employment. Because Mrs. Ramsey's injuries both arose out of and occurred in the course of her employment by Big Bear, they are specifically excluded from coverage by the Commercial General Liability Coverage Form.
Turning to the Stop-Gap Form, we conclude that Penn Traffic is not entitled to coverage for substantial certainty intentional torts under the plain language of this portion of the policy. The form provides coverage for injuries to an employee "arising out of or in the course of his or her employment by the insured * * *" which are caused by an "occurrence." As discussed previously, Mrs. Ramsey's injuries both arose out of and occurred in the course of her employment.
Under the exclusions section of the CIC Stop-Gap Form, subsection (a) excludes coverage for any obligations imposed under any workers' compensation law or other similar law. However, a substantial certainty intentional tort claim necessarily occurs outside the workers' compensation system. Subsection (g) excludes coverage for "any act
committed intentionally by or at the direction of the named insured * * *." (Emphasis added.) The policy then states that exclusion (g) "shall not exclude coverage for the legal liability of the insured * * * resulting from the deliberate intentional act of any employee or agent * * * to produce injury or death to another employee when such act is committed within the scope of employment." (Emphasis added.) Mrs. Ramsey's injuries were arguably caused by the intentional act of an employee who was acting within the scope of his employment. Therefore, exclusion (g) does not negate coverage for Mrs. Ramsey's injuries.
However, the Stop-Gap Form only provides coverage for a "bodily injury" caused by an "occurrence." The form defines an "occurrence" as "an injury caused by accident occurring during the policy period."[3] InPhysicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189, 193, the Supreme Court of Ohio held that "resulting injury which ensues from the volitional act of an insured is still an `accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm willoccur." Quoting Quincy Mut. Fire Ins. Co. v. Abernathy (1984),393 Mass. 81, 84, 469 N.E.2d 797, 799. Here, in order to find Penn Traffic liable for the substantially certain intentional tort, the jury was required to find that the harm was substantially certain to occur. Therefore, Mrs. Ramsey's injuries were not caused by an "occurrence" as defined in the stop-gap form and no coverage is provided.
 C.
Accordingly, the trial court correctly concluded that the underlying insurance policies issued by CIC do not cover substantial certainty intentional torts. Because coverage is not provided under either policy, we need not determine which policy was in effect at the time of Mrs. Ramsey's injury. Appellants' first assignment of error is overruled.
 III.
In their second assignment of error, appellants assert that the trial court erred in granting CIC's summary judgment motion before discovery was completed. We disagree.
At the summary judgment hearing, the court acknowledged that appellants' discovery requests and a motion to compel discovery from CIC were still pending. The court agreed not to rule on the summary judgment motions pertaining to CIC until the parties reached an agreement regarding the production of the requested documents and informed the court of the results. Specifically, appellants were seeking information regarding claims paid by CIC for substantial certainty intentional torts. CIC maintained that such information was not discoverable.
Despite the court's statement, it granted summary judgment to CIC without explicitly ruling on the discovery dispute. Generally, when a trial court fails to rule on a motion, we presume that the trial court overruled the motion. State v. Rozell (June 20, 1996), Pickaway App. No. 95CA17, unreported. Therefore, we must presume that the trial court determined that the information requested by appellants was not discoverable and would not have affected the summary judgment determination.
Upon a proper request, a court must grant the nonmoving party a reasonable opportunity to complete discovery prior to deciding a motion for summary judgment. See Bade v. General Motors Corp. (Dec. 20, 1991), Geauga App. No. 90-G-1599, unreported, and Civ.R. 56(F). However, it is not an abuse of discretion for a trial court to grant a motion for summary judgment where there are outstanding discovery requests when those discovery proceedings would not aid in establishing or negating the facts at issue. Glimcher v. Reinhorn (1991), 68 Ohio App.3d 131, 138.
The court did not abuse its discretion in granting CIC's summary judgment motion without requiring CIC to provide the requested discovery materials to appellants. Appellants sought this information to demonstrate that CIC had previously paid claims for substantial certainty intentional torts under identical insurance contracts and, therefore, CIC knew that the policies covered such claims. Such information would be relevant if the contracts were ambiguous and the court was required to examine other evidence to ascertain the intent of the parties. Here, however, the insurance contracts were unambiguous and the plain language of the policies governed. Because the court could not use the discovery material to determine the meaning of the contract, its decision to proceed without it was not unreasonable, unconscionable or arbitrary.
Appellants' second assignment of error is overruled.
 IV.
In their third assignment of error, appellants argue that the court erred in granting final judgment without considering Penn Traffic's reformation claim. Appellants contend that there was evidence that CIC committed fraud and acted in bad faith when it deleted the Stop-Gap Form and replaced it with the Ohio Liability Coverage Enhancement. Therefore, the trial court, if it found that the Enhancement was in effect, should have granted appellants' request for reformation and found that the Stop-Gap Form was applicable.
Even assuming that appellants are correct and the court should have reformed the insurance contract and applied the provisions of the Stop-Gap Form, summary judgment would still be appropriate. As we discussed in the first assignment of error, there is no coverage for substantial certainty intentional torts under either the Enhancement or the Stop-Gap Form. Therefore, even if the court erred in failing to consider the reformation claim, any error would be harmless as it would have no effect on the outcome of the case.
Appellants' third assignment of error is overruled.
 V.
In their fourth assignment of error, appellants assert that the trial court erred in granting the AIG Companies' motion for summary judgment and denying appellants' motion for declaratory relief and partial summary judgment. The AIG Companies concede that the three insurance policies (appellants' Exhibits 133-135) in question provide coverage for employer intentional torts; however, they submit that Mrs. Ramsey's injuries are not covered by the policies because Big Bear was not a named insured. The trial court agreed and held that "Big Bear was never listed or intended to be a named insured by AIG after the Penn Traffic corporate structure changed and therefore it was not covered by the AIG policy."
The law regarding the interpretation of contracts in Ohio is well-established. "[I]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Inland Refuse Transfer Co. v. Browning-Ferris Industries ofOhio, Inc. (1984), 15 Ohio St.3d 321, 322; see, also, Latina v. WoodpathDev. Co. (1991), 57 Ohio St.3d 212, 214; Alexander v. Buckeye PipelineCo. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. "However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." Inland Refuse at 322. We review questions of law without deference to the trial court. In re McVay (Dec. 7, 1994), Lawrence App. No. 94CA7, unreported, citing Ohio Edison Co. v. PublicUtil. Commn. (1992), 63 Ohio St.3d 555, 556.
The Ohio Supreme Court has repeatedly held that "where the terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Alexander at 246; see, also, Shifrinv. Forest City Enterprises, Inc. (1992), 64 Ohio St.3d 635, 638. In determining whether contract terms are ambiguous, a court should give "common words appearing in a written instrument * * * their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander at paragraph two of the syllabus. "If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such ambiguity." Shifrin at 638.
When construing a written document, a court's "primary and paramount objective is to ascertain the intent of the parties." Aultman Hosp.Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. However, "intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." Id. at 53. Rather, courts generally "presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." Shifrin at 638, citing Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130; see, also, Long Beach Assn., Inc. v. Jones (1998), 82 Ohio St.3d 574, 577.
Here, the insurance contracts clearly list Penn Traffic as a named insured on the policy information page and every endorsement to the policy. The policies agree to pay damages because of a bodily injury to an insured's employee. While Mrs. Ramsey worked at Big Bear, she was clearly an employee of Penn Traffic for liability purposes and she obtained a judgment against Penn Traffic, not Big Bear, for its commission of an intentional tort. Therefore, we conclude that the insurance contracts provide coverage for Mrs. Ramsey's injuries.
AIG Companies assert that the evidence shows that neither party intended for Big Bear employees to be covered by these policies as they were already insured under the CIC policies. Until 1993, Big Bear and PC Food Markets, Inc. ("PC") were owned by Penn Traffic and operated as separate subsidiaries. In 1993, Big Bear and PC merged into Penn Traffic and became divisions. Though PC and other divisions were specifically listed as insureds on the AIG Companies policies following the corporate restructuring, Big Bear was never listed. AIG Companies assert that the inclusion of other divisions as listed insureds creates an ambiguity such that the court could examine the parol evidence and conclude that the parties to the insurance contract did not intend coverage for Big Bear. We disagree in light of the fact that Penn Traffic appears as a named insured throughout the policy and all its endorsements.
No information regarding the structural history of Penn Traffic, its subsidiaries and its divisions can be gleaned from the contracts. PC is listed as "PC Food Markets, Inc." on the endorsement; it is not apparent from the face of this document that PC is a division of Penn Traffic. A plain reading of the contract results in a clear understanding that the entire Penn Traffic Company is an insured. It is only after one examines outside evidence and understands the historical background of Penn Traffic and the insurance contracts that confusion is introduced. Because no ambiguity appears on the face of the policies, we cannot consider this information.
AIG Companies also argue that the insurance policies should be reformed to reflect the parties' actual intention that Big Bear employees not be covered. Equity allows reformation of a written instrument when, due to mutual mistake on the part of the parties to the instrument, the instrument does not evince the parties' actual intention. Mason v.Swartz (1991), 76 Ohio App.3d 43, 50. "The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof * * *." Delfino v. Paul Davies Chevrolet, Inc. (1965),2 Ohio St.2d 282, 286. The theory behind this remedy is that the parties came to an understanding, but when reducing it to writing some provision or language was omitted through mutual mistake. Concrete Wall Co. v.Brook Park (Feb. 26, 1976), Cuyahoga App. Nos. 34054, 34090 34171, unreported, citing Greenfield v. Aetna Cas. Ins. Co. (1944),75 Ohio App. 122. A person seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual. Justarr Corp. v. Buckeye Union Ins. Co. (1995), 102 Ohio App.3d 222, 225.
In granting summary judgment, the lower court did not reach AIG Companies' reformation argument. Therefore, we cannot address whether reformation of the insurance contracts would be appropriate here and leave a determination of that issue in the first instance to the trial court upon remand. See Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360.
We sustain appellants' fourth assignment of error.
 VI.
In appellants' fifth assignment of error, they assert that the trial court erred in granting Federal's summary judgment motion and denying appellants' motion for declaratory relief and partial summary judgment. The trial court found "that there is no genuine issue as to any material fact that Federal's policy does not extend to bodily injury expected or intended from the standpoint of the insured, Penn Traffic, accordingly, it does not extend to an employer's intentional tort."
Though appellants relied on Coverage A and Coverage B below, they rely solely on Coverage A on appeal. This section of the insurance policy reads:
 Coverage A-Excess Follow Form Liability Over Claims Made or Occurrence Coverage
 We will pay, on behalf of an insured, damages in excess of the total Limits of Liability of Underlying Insurance as stated in the Schedule of Underlying Insurance. The terms and conditions of the Scheduled Underlying Insurance are with respect to Coverage A made a part of this policy, except for:
any definition, term or condition therein relating to: any duty to investigate and defend, the Limits of Liability, premium, cancellation,other insurance, our right to recover payment, Extended Reporting periods, or any renewal agreement, and any exclusion or limitation attached to this policy by endorsement or included in the Exclusions applicable under Coverage A and B of this policy.
 With respect to a. and b. above, the provisions of this policy will apply.
 With respect to all Scheduled Underlying Policies, the injury or damage must be caused by an occurrence
which takes place on or after the Effective Date * * *.
* * *
DEFINITIONS
 The terms of this policy shall be applied as if the Definitions listed below are included with the word or words each time they appear in this policy in bold print.
* * *
Occurrence
Means:
 with respect to bodily injury or property damage
liability, an event, including continuous and repeated exposure to substantially the same general harmful conditions neither expected or intended from the standpoint of the insured. All such exposure to substantially the same general conditions will be considered as arising out of one occurrence.
* * *
 Appellants contend that the definition of "occurrence" in the underlying policies is incorporated into the Federal policy. Therefore, if appellants have coverage for substantial certainty intentional torts under any of the underlying policies (including the Aetna policies, the CIC policies, and the AIG Companies policies), Federal must also provide coverage. Appellants base their position on the language in Coverage A which indicates that the terms and conditions of the underlying policies are made part of the Federal policies unless they are specifically excepted in subsection (a) or (b). Since the definition of "occurrence" does not fall under any of the delineated exceptions, the definition of "occurrence" in the underlying policies must be applied.
Federal maintains that its policy specifically states that coverage is only provided for an injury caused by an "occurrence" as defined in its own policy. The policy does not provide a "broad as primary" endorsement and clearly includes a definition of "occurrence" as "an event, including continuous and repeated exposure to substantially the same general harmful conditions neither expected or intended from the standpoint of the insured." Federal argues that a substantial certainty intentional tort does not fall within this definition as it is necessarily expected or intended by the insured. Federal urges this Court to rely on WedgeProducts in determining that there is no coverage under its policy. Appellants argue that Mrs. Ramsey's injuries are covered even if Federal's definition of "occurrence" is applicable.
It is presumed that the intent of the parties to a contract rests in the language that they have chosen to employ in the agreement. Kelly v.Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, 132. A court should attempt to harmonize provisions in a contract so that every word is given effect. Christe v. GMS Mgt. Co. (1997), 124 Ohio App.3d 84, 88, citing 18 Ohio Jurisprudence 3d (1980), Contracts, Section 157. If the terms in the contract are clear and unambiguous, a court should not in effect create a new contract by finding an intent not expressed in the clear language of the contract. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635,638.
If the section of Coverage A which appellants rely on is considered in isolation, the definitions of "occurrence" from the underlying insurance policies would apply here and Federal would be required to provide coverage if any of the underlying insurers were so required. However, such a construction would require us to simply ignore the next section which states that "[w]ith respect to all Scheduled Underlying Policies, the injury or damage must be caused by an occurrence * * *" and the further definition of "occurrence." If we ignored these provisions, we would simply be ignoring a portion of the insurance contract to which the parties agreed. Therefore, we conclude that the definition of "occurrence" in Federal's policy must be examined to determine if coverage is provided.
Federal asserts that this Court should apply the rationale of WedgeProducts, Inc. v. Hartford Equity Sales Company (1987), 31 Ohio St.3d 65. In Wedge Products, the Ohio Supreme Court examined an insurance policy which defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The Court concluded that an intentional tort necessarily involves either an intent to injure or a belief that injury is substantially certain to occur. Therefore, the employee's injuries must have been "expected" and coverage was excluded by the policy.
In Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, the Court examined a similar policy. However, the policy in Harasyn also included a stop-gap endorsement which extended coverage to "damages because of bodily injury * * * sustained by any employee of the Insured arising out of and in the course of his employment by the Insured * * *" and deleted the exclusions in the general liability policy. The Court distinguished the policy in Harasyn from Wedge Products because of the stop-gap endorsement and concluded that the insurer must provide coverage for a substantial certainty intentional tort.
In Physicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189, the Court examined a homeowner's policy which contained an exclusion for "bodily injury or property damage which is expected or intended by the insured." The Court noted that the plain language of the policy was in terms of an intentional or expected injury, not an intentional or expected act. Id. at 193. Therefore, the Court concluded that "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." Id. at syllabus. It was insufficient to show merely that the act was intentional. Id. at 193-194. The Court concluded that there was not sufficient evidence to show that the injuries were intentionally inflicted or substantially certain to occur. Id. at 193-194.
Several appellate courts have applied Swanson to substantial certainty intentional torts and held that "intended or expected to injure" exclusions in commercial general liability insurance policies are ineffective unless it is shown that the insured employer not only intended the act, but also intended the particular resulting injury. See, e.g., Berlekamp Plastics, Inc. v. Buckeye Union Ins. Co. (1997),124 Ohio App.3d 92; Mafett v. Moyer's Auto Wrecking, Inc. (June 7, 2000), Crawford App. No. 3-99-11 3-99-12, unreported. However, in her concurring opinion in Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280, Justice Cook noted that the Swanson Court concluded that the victim's injury was not intentionally inflicted orsubstantially certain to occur. Therefore, Swanson implied that substantial certainty intentional torts are excluded from insurance coverage, but the facts in Swanson did not rise to that level.
Having outlined this case law, we turn to the language of the Federal policy. The policy states that it covers injuries which are caused by an "occurrence" which is defined as an event. The word "event" is not defined in the policy; therefore, we apply the common definition. An "event" is "something that takes place" or "a significant occurrence." Webster's II New College Dictionary (1999). The policy then states that an "event" includes "continuous and repeated exposure to substantially the same general harmful conditions neither expected or intended from the standpoint of the insured." Implicit within this language is the fact that an "event" does not include continuous and repeated exposure to general harmful conditions which are intended or expected by the insured.[4]
Mrs. Ramsey's fall off the loading dock was clearly an "event" as it was something that took place and a significant occurrence. Therefore, it falls within the policy's definition of "occurrence" unless it was caused by "continuous and repeated exposure to substantially the same general harmful conditions" which were "expected or intended" by Penn Traffic.
In her complaint, Mrs. Ramsey alleged that Penn Traffic was liable for: failing to adequately inspect the loading and unloading platform; failing to properly repair and maintain the gate which had been removed from the fence at the edge of the platform; failing to warn Mrs. Ramsey and other employees about the dangers associated with the missing gate; removing the gate and failing to replace it; requiring Mrs. Ramsey and other employees to use the platform while the gate was missing; and other violations of workplace safety standards. In finding Penn Traffic liable for a substantial certainty intentional tort, the jury found that Penn Traffic knew about the danger of the missing gate on the platform, knew that if Mrs. Ramsey was required to work on the platform with the missing gate then harm would be substantially certain, and required Mrs. Ramsey to work on the platform despite this knowledge. See Section II, Subsection (A) of this opinion (citing elements a party must prove to establish intent for substantial certainty intentional tort).
Whether Mrs. Ramsey's injuries were caused by her continuous and repeated exposure to the dangerous platform is not clear from the record before us. Presumably, Mrs. Ramsey could have fallen off the platform on the first occasion she used it after the gate was removed. Moreover, even if Mrs. Ramsey was exposed to the dangerous platform on many occasions, her injury was not necessarily caused by the repeated exposure; rather, the probability of injury may have increased because of the continuous exposure. As a genuine issue as to a material fact remains, summary judgment is not appropriate. It is not clear from the record before us that appellants are not entitled to coverage under the Federal policy.
Appellants' fifth assignment of error is sustained.
Having found merit in two of appellants' assigned errors and overruled the remaining assigned errors, we affirm in part and reverse and remand this matter to the trial court in part for further action consistent with this opinion.
JUDGMENT AFFIRMED IN PART AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND CAUSE REMANDED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J.: Concurs in Judgment and Opinion.
Evans, J.: Concurs in Judgment and Opinion as to
Assignments of Error III and IV; Concurs in
Judgment Only as to Assignments of Error I and
 II. __________________________ William H. Harsha, Judge
[1] The "Who Is An Insured" section reads:
1. If you are designated in the Declarations as:
* * *
 c. an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to liability to which this insurance applies. Your stockholders are also insureds, but only with respect to their liability as your stockholders.
* * *
[2] In Swanson, the Ohio Supreme Court held that in order to avoid coverage on the basis of an exclusion for expected or intentional injuries in the context of a homeowner's liability policy, the insurer must demonstrate that the injury itself was expected or intended.58 Ohio St.3d 189 at syllabus. As discussed by the Sixth District inBerlekamp Plastics, Inc. v. Buckeye Union Insurance Co. (1997),124 Ohio App.3d 92, 100-102, the Ohio Supreme Court has not decided the effect of Swanson on "expected and intended" clauses in commercial general liability policies. Moreover, the Stop-Gap Form issued by CIC refers to intentional acts, not intentional injuries as did the Swanson
policy.
[3] The other definitions of "occurrence" are not applicable here.
[4] To read the definition of "occurrence" in the manner Federal suggests, we would have to change the wording of the definition to read "an event, including continuous and repeated exposure to substantially the same general harmful conditions which results in bodily injury orproperty damage neither expected or intended from the standpoint of the insured." (Underlined portion added.) Alternatively, a comma inserted after the word conditions would change the meaning of the phrase. The phrase would then define "occurrence" as "an event, including continuous and repeated exposure to substantially the same general harmful conditions, neither expected or intended from the insured." The insertion of the comma would change the meaning such that any event which was expected or intended by the insured would be excluded from the definition of an "occurrence" and, consequently, not covered by the policy. As we must rely on the plain language of the policy, we cannot assume that the parties intended either of these results.